IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Matthew Perkins, | Case No. 3:14-3245-TLW |
| PLAINTIFF | |
| v. | **Order** |
| South Carolina Community Bank, | |
| DEFENDANT | |

This matter comes before the Court for consideration of South Carolina Community Bank's Motion to Dismiss the Amended Complaint. The Court grants the motion to dismiss as to the federal law claim and declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses those claims without prejudice.

## I.     Factual and Procedural History[1]

In 2006, Matthew Perkins and others formed JTK Investment, LLC, for the purpose of creating a youth center in Lake City, South Carolina. Am. Compl. ¶ 9, ECF No. 65. In September 2006, JTK executed a note and mortgage in the Bank's favor to finance the purchase of real property for the youth center. *Id.* ¶¶ 10–11. Perkins personally guaranteed the note.[2] However,

---

[1] As this is a motion to dismiss under Rule 12(b)(6), the Court accepts the well-pled allegations of the Amended Complaint as true and construes the facts and reasonable inferences derived from these facts in the light most favorable to Perkins. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

[2] Perkins did not attach the personal guarantee as an exhibit to the Amended Complaint, nor did he specifically assert in his pleading that he personally guaranteed the note. However, he alluded to it in the Amended Complaint, *see id.* ¶ 15, and he specifically addressed the personal guarantee in his response to the motion to dismiss, attaching it as an exhibit. ECF No. 70 at 12. The Bank did not raise any objection to the Court considering the personal guarantee.

community support and investment backers for the youth center fell through, and JTK defaulted on the loan. *Id.* ¶¶ 12–13. In February 2011, JTK and the Bank agreed to a Deed in Lieu of Foreclosure and Estoppel Affidavit, which provided broadly that, in order to avoid foreclosure proceedings, JTK would deed the property to the Bank in full satisfaction of the loan, including releasing Perkins from personal liability. *See id.* ¶¶ 14–16.[3]

Perkins later attempted to obtain a loan to finance the construction of his own home, but he was denied a loan from his credit union based on inaccuracies on his credit report arising out of the JTK loan. *Id.* ¶ 17. He eventually obtained a loan from another institution at a higher interest rate. *Id.* ¶ 19.

Perkins then contacted the Bank to correct his credit report, which it did. *Id.* ¶ 20. However, the Bank later returned the debt to his credit report, which he discovered when he was denied a car loan. *Id.* ¶ 21. He called the Bank numerous times to find out what needed to be done to fix his credit report, but he never received an answer. *Id.* ¶ 22.

Perkins has been denied credit several times since entering into the deed in lieu and notifying the Bank of the errors on his credit report, and his mortgage company recently tripled his escrow payments from $200 to $600 as a result of his inaccurate credit report. *Id.* ¶¶ 23–24.

In August 2014, Perkins brought this suit against the Bank, asserting a federal claim for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*; and South Carolina state law claims for breach of contract, breach of contract accompanied by a fraudulent act, and unfair trade practices.[4] ECF No. 65. The Bank filed a motion to dismiss pursuant to Rule 12(b)(6),

---

[3] Perkins attached the estoppel affidavit and a portion of the deed in lieu as exhibits to the Amended Complaint, ECF Nos. 65-1, 65-2, and the Bank attached the full deed in lieu as an exhibit to the motion to dismiss, ECF No. 67-1.

[4] Perkins originally sued both the Bank and Equifax Information Services, Inc., but Equifax settled out of the case. *See* ECF No. 41. Additionally, the Bank had been in default, but the Court granted

2

ECF No. 67, Perkins filed a response in opposition, ECF No. 70, and the Bank filed a reply, ECF No. 71.

This matter is now ripe for decision.

## II.     Standard of Review

A Rule 12(b)(6) motion should be granted "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244. "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

## III.    Discussion

### A.     FCRA claim

In Perkins' federal claim, he asserts that the Bank violated the FCRA in the following ways:

a.  By willfully and/or negligently failing, in the preparation of the consumer report concerning Perkins, to follow reasonable procedure to assure maximum possible accuracy of the information in the report.

b.  By willfully and/or negligently failing to conduct a proper investigation with respect to the disputed information, review all relevant information provided to it by consumer reporting agencies, and failing to correct the inaccurate reporting to consume [sic] reporting agencies, as required pursuant to § 1681s-2(b) of the Act.

---

the Bank's motion to set aside the default. *See* ECF Nos. 12, 14, 51, 57. With the Bank's consent, Perkins then filed his Amended Complaint, in which he only named the Bank as a defendant. *See* ECF Nos. 62, 64, 65.

      c.      By willfully and/or negligently failing to modify, delete, or permanently remove the inaccurate information, as required pursuant to § 1681s-2(b) of the Act.

Am. Compl. ¶ 26.

As an initial matter, the Bank asserts that Perkins is attempting to litigate a violation of 15 U.S.C. § 1681s-2(a), which sets forth the duties of furnishers of information, such as the Bank, to provide accurate information to credit reporting agencies (CRAs). The Bank notes that, pursuant to § 1681s-2(c) and (d), there is no civil liability for violations of subsection (a), and argues that his claim based on this subsection should be dismissed for failure to state a claim. He responds by acknowledging that there is no private right of action for violations of subsection (a), but asserts that his FCRA claim is only based on subsection (b).

While the Bank is correct that private suits alleging violations of § 1681s-2(a) are barred, *see Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008), the Court concludes that the substance of Perkins' FCRA claim is for violations of subsection (b), not (a). His FCRA cause of action closely tracks the statutory language in subsection (b), *see* Am. Compl. ¶ 26, and—with one prominent exception discussed below—his factual allegations state a claim for relief under subsection (b) "that is plausible on its face," *Twombly*, 550 U.S. at 570. Thus, the Court concludes that his FCRA claims do not arise under subsection (a) and are therefore not subject to dismissal on that basis.

However, as alluded to above, Perkins has not made an allegation necessary to maintain an FCRA claim for violations of § 1681s-2(b)—that the Bank received notice of a dispute from a CRA. Section 1681s-2(b) provides that the furnisher's duties are triggered "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title," and § 1681i(a)(2) provides, in turn, that the CRA must provide notice of a dispute to the furnisher.

The Fourth Circuit has recognized that a furnisher has no duty to investigate unless it

receives notice from a CRA:

> [U]nder the FCRA, when a furnisher of information to consumer reporting agencies is notified of a credit dispute, it must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency . . . ," and "report the results of the investigation to the consumer reporting agency" within thirty days of being notified of the dispute. 15 U.S.C. § 1681s-2(b)(1), (2), 15 U.S.C. § 1681i(a). However, a furnisher's duty to investigate is not triggered until it receives notification of a dispute from a consumer reporting agency. *See* 15 U.S.C. § 1681s-2(b)(1); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 784 (W.D. Ky. 2003) ("This means that a furnisher of credit information, such as the Bank, has no responsibility to investigate a credit dispute until *after* it receives notice from a consumer reporting agency.") (emphasis in original). Once the duty to investigate is triggered, a furnisher breaches that duty if it fails to comply within thirty days.

*Mavilla v. Absolute Collection Serv., Inc.*, 539 F. App'x 202, 208 (4th Cir. 2013). Numerous other courts across the country agree with this interpretation, and the Court is not aware of any case law to the contrary. *See, e.g.*, *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011); *Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 35 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009); *Downs v. Clayton Homes, Inc.*, 88 F. App'x 851, 853–54 (6th Cir. 2004); *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639–40 (5th Cir. 2002); *Croft v. Bayview Loan Servicing, LLC*, 166 F. Supp. 3d 638, 641 (D.S.C. 2016); *Bailey v. Bank of Am. Corp.*, No. 3:14-cv-1849-TLW, 2015 WL 2240519, at *7 (D.S.C. May 11, 2015). This case law sets forth the process that a plaintiff is required to follow to pursue a FCRA claim of this nature. This process is not a mere technical suggestion; it is what the FCRA requires to trigger the furnisher's duty to investigate.

Notably, in this case, Perkins did not allege in his Amended Complaint that he notified a CRA about the dispute or that a CRA notified the Bank about the dispute.[5] In its motion to dismiss,

---

[5] There is some dispute about whether it is sufficient for a complaint to allege that the consumer notified a CRA of the dispute, or whether the complaint must allege that the furnisher received notification from a CRA of the dispute. *See White v. Green Tree Servicing, LLC*, 118 F. Supp. 3d 867, 874–75 (D. Md. 2015). However, it is not necessary for the Court to resolve that issue today,

the Bank argued that the case should be dismissed on this basis, and he did not address this argument in his response. The Bank asserts in its reply that, because he has not addressed the issue, he concedes the argument. The Court agrees. *See, e.g.*, *Campbell v. Rite Aid Corp.*, No. 7:13-cv-02638-BHH, 2014 WL 3868008, at *2 (D.S.C. Aug. 5, 2014) (holding that, where the plaintiff failed to respond to an argument in the defendant's motion to dismiss, "the Court can only assume that Plaintiff concedes the argument"). Accordingly, because Perkins did not allege that the Bank's duties under § 1681s-2(b) were triggered by a notification from a CRA, as required by statute and the case law embracing that statutory process, the Court grants the Bank's motion to dismiss the FCRA claim.

### B. State law claims

In addition to Perkins' FCRA claim, he also asserted South Carolina state law claims for breach of contract, breach of contract accompanied by a fraudulent act, and unfair trade practices. A district court may decline to exercise supplemental jurisdiction over remaining state law claims after it has dismissed the federal claims. *See* 28 U.S.C. § 1367(c)(3). Once the district court has dismissed any federal claims, the district court has wide discretion in deciding whether to dismiss the state law claims over which it has supplemental jurisdiction. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 n.4 (4th Cir. 2006). In exercising this discretion, the district court must consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

After careful consideration, the Court concludes that the parties would not be

---

as Perkins did not make either allegation in his Amended Complaint.

inconvenienced or unfairly prejudiced by the Court declining to exercise supplemental jurisdiction, that there are no underlying issues of federal policy involved in the state law claims, that the comity factor weighs in favor of declining to exercise supplemental jurisdiction and instead allowing state courts to address state law claims, and that considerations of judicial economy counsel against exercising supplemental jurisdiction. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims and, therefore, declines to rule on the Bank's motion as it applies to these claims.

## IV.    Conclusion

The Bank's Motion to Dismiss, ECF No. 67, is **GRANTED** as to Perkins' FCRA claim. His remaining state law claims are **DISMISSED WITHOUT PREJUDICE**.[6]

**IT IS SO ORDERED**.

*s/ Terry L. Wooten*
Terry L. Wooten
Chief United States District Judge

January 12, 2017
Columbia, South Carolina

---

[6] The Court notes that, because it has declined to exercise supplemental jurisdiction, the statute of limitations on these state law claims "shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).